Rosario Bianchi Rosafa, demandante y apelada, *v.* Manuel V. Domenech, en su carácter de Tesorero de Puerto Rico, demandado y apelante.

No. 6051.—*Sometido:* Abril 28, 1933. *Resuelto:* Junio 26, 1934.

*Hon. Procurador General Benjamín J. Horton (Charles E. Winter en el alegato) y M. Rodríguez Serra, Procurador General Auxiliar,* abogados del apelante; *Frank Martínez y Frank Bianchi,* abogados de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Este caso está relacionado con los recursos números 6100 y 6101 que hemos decidido en el día de hoy. Se diferencia de ellos en que en éste la contribuyente no rindió como en aquéllos planilla original alguna. Sin embargo, practicada la investigación por el Tesorero, la contribuyente por medio de su esposo, el 5 de mayo de 1920, firmó sin reparo, voluntariamente, la planilla que sirvió de base al Tesorero para tasar la contribución de que se trata.

Los hechos fueron sometidos a la corte sentenciadora mediante estipulación de la que transcribimos lo que sigue:

"9. El 9 de agosto de 1922 la demandante acusó recibo al Tesorero de Puerto Rico de la notificación que se le hiciera el día 10 de julio anterior de la imposición de la contribución y de la fecha del pago de la misma. En su acuse de recibo la demandante alegó que dicha contribución había sido satisfecha por su esposo, y solicitaba explicaciones sobre esa contribución tan atrasada. El 9 de agosto de 1922 se contestó a la contribuyente, informándole que el Departamento, por medio de un inspector había practicado una investigación de las operaciones de la firma Sucrs. de Bianchi, de la cual ella era socia, y había encontrado que de los beneficios repartidos por dicha firma en el año de 1917, la contribuyente recibió una participación montante a $86,799.88; y que la planilla sobre la cual se había impuesto dicha contribución había sido preparada de oficio por el Departamento de Hacienda y jurada y suscrita sin protesta por su esposo, Sr. Miguel Esteves, a nombre y en representación de ella.

"10. La demandante fué, con posterioridad a las fechas indicadas en el hecho anterior, requerida de pago, dándosele detalles de los recargos e intereses, que totalizaban con la contribución a $3,400.23.

"11. Después del 21 de febrero de 1923 la demandante no atendió a distintos requerimientos que se le hicieron para que verificase el pago de la contribución, recargos e intereses, y utilizó los servicios profesionales del Ledo. Cayetano Coll y Cuchí, quien a nombre de la demandante, solicitó una investigación del caso o que en su defecto se sometiera el mismo a la Junta de Revisión e Igualamiento. Más tarde la demandante utilizó los servicios del Sr. José A. Fábregas, para que se repitiera la investigación y para que se suspendiese la gestión de cobro.

"12. En julio de 1927 la demandante interpuso recurso de alzada ante la Junta de Revisión e Igualamiento alegando en dicho recurso de alzada que la contribución sobre ingresos impuesta a la demandante estaba prescrita de acuerdo con la ley.

"13. En marzo 11 de 1930 el Secretario de la Junta de Revisión e Igualamiento notificó a la demandante que no había podido darse curso a dicha alzada por haber ésta sido radicada fuera de término.

"14. En junio de 1930 el Tesorero de Puerto Rico, embargó a nombre de El Pueblo de Puerto Rico bienes inmuebles de la demandante, los cuales hubiesen sido vendidos en pública subasta si la contribución no era satisfecha, por lo que la demandante se vió obligada a pagar bajo protesta la suma de $3,207.76, más $3,299.72 de recargos e intereses según aparece en el recibo No. 101."

Como puede verse, hubo notificación y requerimiento de pago a la contribuyente dentro del período de cinco años contado a partir del 5 de mayo de 1920, pero no consta que se iniciaran los procedimientos de cobro por la vía de apremio o por la judicial dentro de ese período. El primer embargo de que se tiene noticia según la estipulación, se practicó en junio de 1930, o sea diez años después de radicada la planilla en la Tesorería por el representante de la contribuyente.

Sostiene en su alegato el Tesorero que en este caso no cabe invocar la prescripción de acuerdo con la ley de Puerto Rico que según él es la aplicable. Admite que la contribución se impuso de acuerdo con la Ley Federal sobre Contribución sobre Ingresos de 1916, pero alega que en esa ley no se fijaba límite alguno al cobro de la contribución y que habiendo sido derogada como lo fué por la sección 77 de la Ley No. 80 de 1919, Leyes de 1919, p. 671, no son aplicables

las leyes posteriores del Congreso sobre la materia, sino las de la Legislatura de Puerto Rico sobre el particular.

A nuestro juicio rigen en este caso las ulteriores leyes del Congreso que contienen disposiciones aplicables a la ley en virtud de la cual se impuso la contribución. De acuerdo con ellas, una vez radicada la planilla y tasada la contribución por el Tesorero, éste debió hacerla efectiva por la vía judicial o por el procedimiento de apremio dentro del término de seis años y no lo hizo. Veamos lo que dice la Corte Suprema de los Estados Unidos sobre el particular.

"La cuestión principal que aquí se nos presenta y la única que es necesario que consideremos es si habiéndose incoado el pleito más de seis años después de hacerse la tasación, el mismo había prescrito de conformidad con las disposiciones del artículo 278, que copiamos a continuación:

" ' (a) Si se dejare de radicar la planilla podrá hacerse una tasación de la contribución o iniciarse un procedimiento judicial para el cobro de la misma sin hacerse tal tasación, en cualquier tiempo.

" ' * * * * * * *

" ' (d) Cuando la tasación . . . se ha hecho (con anterioridad o con posterioridad a la aprobación de esta ley) dentro del período prescriptivo estatutario propiamente aplicable a la misma, tal contribución puede ser cobrada mediante procedimiento de apremio o mediante procedimiento judicial (iniciado antes o después de la aprobación de esta Ley), únicamente si se incoa (1) dentro de seis años contados a partir de la fecha en que se hace la tasación de la contribución, . . .' U. S. C. Supp., Título 26, párrafos 1058, 1061.

"En armonía con lo alegado por el gobierno, la corte inferior resolvió que no se había radicado una planilla dentro del significado del párrafo (a). Véase también el caso de Updike v. United States, 8 F. (2d) 913. Asumimos, sin resolverlo, que ese criterio es correcto y así consideramos el caso.

 * * * * * * *

"*Segundo.*—De ello se desprende que si de conformidad con el artículo 278 (d) el período prescriptivo había transcurrido en favor de la corporación, también había transcurrido en favor de los cedentes. La contención del gobierno de que la sección no es aplicable bajo los hechos del presente caso, depende del significado de la frase que hemos puesto en bastardillas: 'Cuando la tasación . . . se ha hecho . . . *dentro del período prescriptivo estatutario propia-*

*mente aplicable a la misma,* tal contribución puede ser cobrada . . . mediante procedimiento judicial . . . únicamente si se incoa (1) dentro de seis años contados a partir de la fecha en que se hace la tasación de la contribución . . .' El argumento, en efecto, es éste. Cuando en 1920 se hizo la tasación, no existía, ni había existido, disposición en la ley que en forma alguna limitara el tiempo para tasar o cobrar las contribuciones, y, por consiguiente, una tasación hecha en 1920 de contribuciones correspondientes al año 1917 no podía llenar los requisitos del artículo 278 (*d*) porque a ese respecto no existía 'período prescriptivo estatutario propiamente aplicable a la misma'; y asumiendo que estatutos aprobados con posterioridad a 1920 sean aplicables, la disposición en estos estatutos es que la tasación puede hacerse 'en cualquier tiempo,' y ése no es un *período* prescriptivo dentro del significado del artículo 278 (*d*), puesto que la palabra 'período' significa un lapso de tiempo específico que de ordinario se calcula en años, meses y días.

"La intención clara del artículo 278, según el mismo se aplica a los hechos del presente caso, fué especificar el límite de tiempo en que se podía exigir la responsabilidad criminal. Cuando en un caso en que no se ha radicado planilla se hace una tasación, y ésta, según el párrafo (*a*), puede hacerse en cualquier tiempo, el procedimiento para el cobro de la contribución ·debe incoarse dentro de ·los seis años siguientes; mas cuando no ha habido· tasación, el procedimiento puede iniciarse en cualquier momento. En el presente caso hubo una tasación y no es de dudarse que el caso estaba prescrito al expirar el período prescriptivo de seis años, a no ser por la presencia de las palabras que aparecen más arriba en bastardillas. ¿Tienen estas palabras el efecto de evitar la prescripción Creemos que no. Habiéndose hecho realmente una tasación, debe asumirse que el gobierno estaba en posesión de hechos que dieron origen a la responsabilidad en que se fundó la tasación. En tal caso el permitir un período de tiempo indefinido para el cobro· de la contribución no estaría en armonía con la práctica vigente de la·ley de ofrecer tranquilidad a los contribuyentes fijándoles un lapso de tiempo específico, contado a partir de la tasación, dentro del cual deben iniciarse los pleitos y procedimientos para el cobro de contribuciones.

"A la luz de esa práctica, parece razonablemente claro que la cláusula de reserva, 'dentro del período prescriptivo estatutario propiamente aplicable a la misma,' fué insertada solamente para proteger· al contribuyente—es decir, para impedir el cobro de la contribución aun dentro de los seis años después de haberse hecho la

tasación, si al hacerse la tasación estaba prescrita por el período prescriptivo estatutario aplicable. Esta conclusión es confirmada, si se hace necesaria su confirmación, por las disposiciones del párrafo (a), que claramente tienen por mira que el período de seis años sea aplicable, excepto cuando el procedimiento de cobro sea iniciado 'sin tasación,' caso en el cual puede iniciarse 'en cualquier tiempo.'

Puede que la cláusula de reserva no sea estrictamente necesaria, mas se insertó a consecuencia del cuidado excesivo que se tuvo en poner el derecho del contribuyente fuera de disputa. Sea ello como fuere, creemos que ésta es la interpretación que lógicamente debe dársele a la causa y la que debe ser aceptada, especialmente en vista de la regla que exige que las leyes de contribuciones, incluyendo las disposiciones prescriptivas que las mismas comprendan, sean interpretadas liberalmente en favor del contribuyente. Bowers v. N. Y. & Albany Co., 273 U. S. 346, 349.

"Esto resuelve el caso y se hace innecesario determinar si la frase 'en cualquier tiempo' lleva consigo un 'período prescriptivo,' o considerar cuestiones presentadas en el argumento." United States v. Updike, 281 U. S. 489, 491, 494.

A igual conclusión habría que llegar siguiendo el mismo razonamiento aunque aplicáramos únicamente las leyes de Puerto Rico invocadas por el Tesorero apelante, a saber: la No. 59 de 1917, la No. 80 de 1919, la No. 43 de 1921 y la No. 74 de 1925, especialmente en vista de lo dispuesto en la sección 61 de la última, a saber:

"Sección 61.—(a) En el caso de una declaración falsa o fraudulenta con la intención de evadir la contribución, o en el caso de haber dejado de rendir la declaración, la contribución podrá ser impuesta, o un procedimiento entablado en una corte para el cobro de dicha contribución, en cualquier momento y sin hacerse tasación alguna.

※ ※ ※ ※ ※ ※ ※

"(c) Cuando se impusiere la contribución dentro del término prescrito en la sección 60 ó en esta sección, dicha contribución podrá ser cobrada mediante embargo o procedimiento judicial entablado dentro de los seis años después de impuesta la contribución. Nada de lo contenido en esta Ley se interpretará en el sentido de evitar

que empiece sin tasación el procedimiento judicial para el cobro de la contribución, en cualquier momento antes del vencimiento del período dentro del cual la tasación pudiera ser hecha.''

 * * * * * * *

Ley No. 74 de 1925, Leyes de 1925, p. 523.

Una vez rendida la planilla como se rindió en este caso y hecha la tasación por el Tesorero, se creó una situación distinta a la del caso de no haberse rendido declaración alguna. Existía algo definido sobre lo cual era necesario actuar. El cobro no podía posponerse indefinidamente.

Sostiene por último la parte apelante que habiéndose reconocido expresamente en la estipulación que la gestión de cobro por parte del Gobierno se paralizó a petición de la contribuyente y jamás lo fué por término indefinido, la contribuyente está impedida de invocar en su favor la prescripción.

Produce el argumento la impresión de algo justo en verdad, pero se trata de la interpretación de leyes contributivas y la contención del Tesorero no encuentra apoyo en la jurisprudencia. Era necesaria una estipulación por escrito, que no existe en este caso.

Véase lo que dice Klein en su obra Federal Income Taxation, Par. 41:17 (f) pág. 1458:

"*Renuncia Implícita.*—A pesar del contexto de los estatutos que exigen que la prolongación del período prescriptivo estatutario debe 'consentirse' por escrito por el contribuyente, requiriendo ello aparentemente una renuncia expresa, el departamento en algunos casos ha tratado de sostener una tasación hecha después de trascurrido el período estatutario fundado en que el contribuyente implícitamente ha renunciado el beneficio del estatuto. Las cortes, sin embargo, han rechazado las contenciones del departamento tanto en un caso en que su reclamación se fundaba en la radicación de una fianza en conexión con una reclamación para que se hiciera una rebaja de las contribuciones (de 1918), como cuando se fundó en una reclamación de crédito, hecha por el contribuyente, basada en un supuesto pago en exceso de contribuciones (para 1918), teniendo conocimiento el contribuyente de que bajo la práctica entonces existente del departamento el efecto de tal reclamación sería suspender los procedimientos por

parte del mismo para el cobro de contribuciones adeudadas por años anteriores (1916 y 1917).''

Y en Par. 41:17 (*o*) págs. 1468, 1469:

''. . . 'no puede considerarse una renuncia porque se ha resuelto consistentemente por las cortes de este país que renuncia es el abandono intencional de un derecho conocido, tanto con conocimiento de su existencia como con la intención de abandonarlo (citando casos). y no hay prueba en este caso para demostrar tal intención de parte del contribuyente.' ''

*A virtud de todo lo expuesto, debe declararse sin lugar el recurso y confirmarse la sentencia apelada.*

El Juez Asociado Señor Córdova Dávila no intervino.